IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD CASTON, | : | |
|     Petitioner | : | No. 1:17-cv-01436 |
| | : | |
| v. | : | (Judge Rambo) |
| | : | |
| CAPTAIN S. SPAULDING, | : | |
|     Respondent | : | |

## MEMORANDUM

On August 14, 2017, Donald Caston ("Caston"), a prisoner confined at the Allenwood Medium Correctional Institution, White Deer, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Caston challenges the decision of a Discipline Hearing Officer ("DHO") that found him guilty of possession of alcohol. (Id.) Having received the $5.00 filing fee on September 13, 2017, an Order to Show Cause was issued on September 19, 2017. (Doc. No. 5.) Respondent filed a response to the petition on October 10, 2017 (Doc. No. 8), and Caston filed his traverse on October 26, 2017 (Doc. No. 9). Accordingly, this matter is ripe for disposition. For the reasons that follow, the petition will be denied.

I.     BACKGROUND

On October 30, 2016, a bag containing liquid was found in Caston's cell, number 234, in which he was the sole occupant. (Doc. No. 8 at 2; Ex. 1, Decl.

Lavelle.) Caston was issued Incident Report 2912889, charging him with a Code 113 prohibited act for possession of intoxicants after the liquid in the bag was tested with the Alco-Sensor III, which indicated that the liquid had an alcohol content of .401. (Id.) A copy of the incident report was delivered to Caston on October 31, 2016, and he was advised of his right to remain silent throughout the disciplinary process. (Id. at 3.)

On November 3, 2016, Caston appeared before the Unit Discipline Committee ("UDC"), wherein he asserted that the charge was "not true. It was not wine/alcohol, it was fruit salad." (Id.) The UDC referred the case to a DHO for disposition. (Id.) Caston signed an acknowledgment of his receipt of the Inmate Rights at Discipline Hearing Form and Notice of Discipline Hearing before the DHO, and indicated that he did not wish to have a staff representative, but requested that three inmates appear as witnesses on his behalf. (Id.)

On February 2, 2017, Caston appeared before the DHO, who advised Caston of his rights. (Id.) Caston indicated that he understood his rights and stated, "[m]y intent was to make fruit salad and I added water to it and placed it in my garbage can to eat later." (Id. at 4.) Caston's inmate witnesses also appeared, with the first witness providing that he "was in the unit living in cell 107 and [] spoke with Caston earlier and said he made a fruit salad to eat later," the second stating that he "was in

2

the unit living in cell 231 and Caston had some pineapples and making a fruit salad. The officer found it in the garbage can," and the third inmate witness stating that he had no knowledge of the incident. (Id.)

The DHO also considered the memoranda of three staff members and a photograph of the evidence. (Id.) In the incident report, Correctional Officer Sura provided that on October 30, 2016 at 6:15 p.m., Sura used the Alco-Sensor III to test the bag of liquid found in Cell 234. (Id. at 4-5.) The liquid tested positive for intoxicants, registering a .401 alcohol content. (Id. at 5.) A second test was performed at 6:30 p.m. with the same results. Caston was the sole occupant of Cell 234. (Id.)

The DHO also considered a photograph taken by Lieutenant Hughes dated October 30, 2016, which depicts the intoxicants as described in the incident report. (Id.) Officer Malone also provided a memorandum dated October 30, 2016, writing that while conducting a random search of Cell 234, he discovered a plastic bag located in Caston's personal trash can which contained a brownish colored liquid with chunks of banana and apple. (Id.) Officer Malone secured the trash can with the bag and sent the contents to the lieutenant's office for testing. (Id.)

The DHO found the charge to be supported by the greater weight of the evidence cited in the report and provided that the inmate witnesses provided no

3

credible evidence other than the bag and its contents belonged to Caston. (Id. at 6.) The DHO noted that Caston neither admitted nor denied the charge, but stated that the substance found in the bag was fruit salad. (Id.) The DHO concluded that the greater weight of the evidence and some facts support the finding that Caston committed the Code 113 offense of possession of intoxicants. (Id.)

Caston was sanctioned to sixty (60) days disciplinary segregation, disallowance of forty-one (41) days good conduct time, forfeiture of 365 days non-vested good conduct time, loss of phone and visiting privileges for one year and a $500 monetary fine. (Id.) The DHO's report was issued on February 3, 2017 and delivered to Caston that same day. (Id.) After Caston exhausted his administrative remedies, he filed this instant petition. (Id. at 1-2.) Caston disputes the DHO's reliance "on the readings of an Alco-Sensor machine that had not been 'Calibrated' per institutional program statement, as well as a manufacturer's requirement for operational purposes." (Doc. No. 1 at 7.)

## II. DISCUSSION

Caston's petition presents the claim that there was insufficient evidence for the DHO to find him guilty of the prohibited act charged, i.e., Code 113 offense of possession of intoxicants. Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v.

4

Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Since Caston's sanctions include the loss of good conduct time, Caston has identified a liberty interest.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary

board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457. The Hill standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. See Thompson v. Owens, 899 F.2d 500, 501-502 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. Id. If the UDC finds that a prisoner has committed

a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. Id. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. Id.

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. Id. The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. Id. After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. Id. If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3. Id. Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the

DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed.  Id.

### A. Caston Was Afforded His Due Process Rights

It is clear that Caston was afforded his procedural due process rights under Wolff and the BOP regulations.  Caston's hearing before the DHO was held on February 2, 2017.  (Doc. No. 8-1, Ex 1, Attach. B.)  The record supports that Caston received a copy of the incident report on October 31, 2016.  (Id. at Ex. 1, Attach. A.)  Caston's three witnesses were permitted to testify at the hearing.  (Id. at Ex. 1, Attach. B.)  Moreover, Caston was informed of his rights at the DHO Hearing, including his right to a staff representative, but chose to proceed without one.  (Id.)  Lastly, Caston received a copy of the written decision of the DHO on February 3, 2017, which included the evidence relied upon and the rationale behind the disciplinary action.  (Id.)  Accordingly, the Court finds that Caston received all due process procedures to which he was entitled.

### B. The DHO's Decision Was Based On Sufficient Evidence

With respect to the sufficiency of the evidence, Respondent has attached to his response the Incident Report, the DHO Report, and the Alco-Sensor III breathalyzer calibration.  (Doc. No. 8-1, Ex. 1, Attachments A, B, C.)  These

documents unequivocally establish that there was some evidence supporting the decision of the DHO.

In pertinent part, the DHO provided the following in his decision finding Caston guilty of the prohibited act of a Code 113 offense of possession of intoxicants:

> During this discipline hearing, the following information was evidentiary and documented by the DHO in his findings. Caston's involvement in the incident, as noted in Section 11 of Incident Report 2912889, as provided by J. Sura, Correctional Officer . . . Sura [provided that] [o]n 10/30/2016 at 6:15 pm I used the Alco-Sensor III . . . to test a bag that contained a liquid which consisted with the characteristics of home-made intoxicants . . . [t]he cell was occupied by a single inmate; Caston, Donald. The liquid tested positive for intoxicants. Specifically, the tester indicated that the alcohol content was .401. The bag with the liquid substance was tested a second time at 6:30 pm in which the tester again indicated that the alcohol content was .401
>
> Inculpatory evidence in the form of a photograph taken by Lt. Hughes dated 10/30/16 corroborated the evidence cited in this report. The photograph clearly depict[s] the homemade intoxicants as described in the report along with the positive test reading of .401 as indicated in the report . . .
>
> Inculpatory evidence in the form of a memorandum from Officer Malone dated 10/30/16 corroborated the evidence cited in this report. Officer Malone [provided that]: [o]n 10/30/16 at 6:00 pm. I was conducting a random cell search of Inmate Caston, cell 234 in Unit 1B. Caston is the sole occupant of the cell. While conducting a search, I discovered a plastic bag that was located inside the inmate's personal trash can. The bag contained a liquid, brownish in color with chunks of banana and apple floating in the liquid. I removed the

> trash can with the bag and secured it in the unit office. The contents were sent to the lieutenant's office for testing.
>
> The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be supported by this case based upon the greater weight of the evidence cited in this report. The DHO finds no credible evidence provided by the witnesses other than the contents belonged to Inmate Caston. There was no pineapple noted in the contents of the intoxicants as noted from one of the witness statements. Caston indicated he had eaten the pineapple earlier when questioned of the witness's statement. Caston was the sole occupant of the cell and admits to the ownership of the contents discovered in his cell . . . Upon questioning by the DHO, Caston . . . neither admitted nor denied the charge. He elaborated upon his plea by stating, it was fruit salad. After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence / some facts, listed in the paragraphs above, support(s) the finding, Caston . . . committed the prohibited act . . . .

(Doc. No. 8-1, Ex. 1, Attach. B at 9-11.) While it does not appear that Caston raised any procedural or evidentiary issue regarding the calibration of the Alco-Sensor during the hearing, the BOP documentation reflects that the Alco-Sensor used to test the liquid found in Caston's cell on October 30, 2016, had been calibrated on October 3, 2016 and November 1, 2016, in accordance with BOP policy. (Doc. No. 8 at 11; Ex. 1, Attach. C.)

Moreover, the DHO gave an explanation for the sanctions, including his judgment as to what was needed to deter Caston from engaging in similar behavior

in the future. (Doc. No. 8-1, Ex. 1, Attach. B at 11.) Because Caston was accorded all of his due process rights under <u>Wolff</u> and the BOP regulations, and there was some evidence supporting the decision of the DHO, Caston's petition for writ of habeas corpus will be denied. An appropriate Order follows.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: January 24, 2018